UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES R. MERCER, JR.,

         Plaintiff,

  v.                 9:18-CV-1148
                        (MAD/ATB)

ANN MARIE T. SULLIVAN, et. al.,

         Defendants.
_____

APPEARANCES:

JAMES R. MERCER, JR.
Plaintiff, pro se
87-C-0688
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

**I. INTRODUCTION**

  Plaintiff James R. Mercer, Jr. ("Plaintiff") commenced this action by submitting a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") together with an application to proceed in forma pauperis. Dkt. No. 1 ("Compl."), Dkt. No. 2 ("IFP Application"). By Decision and Order filed October 22, 2018 (the "October Order"), Plaintiff's IFP Application was granted and the Court reviewed the sufficiency of the Complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. See Dkt. No. 5. In the October Order, the Court dismissed the following claims, without prejudice: 1) Fourteenth

Amendment due process claims; (2) Equal Protection claims; (3) Eighth Amendment claims; (4) First Amendment claims related to the grievance process; (5) retaliation claims based upon failure to investigate; (6) conspiracy claims; (7) state law claims; and (8) claims for declaratory and injunctive relief.[1]  Dkt. No. 5 at 27-28.  The Court directed defendants Gavin Elder ("Elder"), Jean Burdick ("Burdick"), Bud. C. Ballinger, III ("Ballinger") and Megan X. Thomas ("Thomas") to respond to Plaintiff's First Amendment retaliation claims.  *Id.* at 28. Plaintiff was advised that if he chose to pursue one or more of the claims dismissed without prejudice by the Court, he must file an amended complaint, which would supersede and replace the original complaint in its entirety.  *Id*. at 28, n. 13.  Plaintiff was cautioned that any amended complaint filed must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.  *Id*.  Summonses were issued to defendants and, on November 27, 2018, defendants filed acknowledgments of service.  Dkt. Nos. 6, 10. Defendants have not yet answered the Complaint.

Presently before the Court is Plaintiff's Amended Complaint.  Dkt. No. 8 ("Am. Compl.").

## II.     SUMMARY OF THE AMENDED COMPLAINT

The factual recitation set forth in the Amended Complaint is substantially similar to what was set forth in the original Complaint.  *Compare* Compl. *with* Am. Compl.   The incidents that form the foundation for the Amended Complaint occurred while Plaintiff was at Marcy C.F.  *See generally*, Am. Compl.[2]  The following facts are set forth as alleged by

---

[1]     Plaintiff's 1983 claims for monetary damages against defendants in their official capacity were dismissed, with prejudice.  Dkt. No. 5 at 27.

[2]     Plaintiff has not plead whether he was confined at Marcy C.F. in the custody of the Department

2

Plaintiff in the Amended Complaint.

In 2013, defendant Commissioner of the New York State Office fo Mental Health ("OMH") Ann Marie T. Sullivan ("Sullivan") entered into a contract with the New York State Department of Corrections and Community Supervision ("DOCCS") to provide a sex offender treatment program at Marcy C.F. Am. Compl. at 4. The program, entitled the New York State Office of Mental Health ("OMH") Prison-Based Sex Offender Treatment Program ("PBSOTP"), was a voluntary, outpatient program.[3] *Id*. The PBSOTP operated without written or posted polices, procedures, rules and regulations. *Id*. at 5-6.

In August 2016, Plaintiff was involuntarily transferred to Marcy C.F. to participate in the PBSOTP. Am. Compl. at 5. OMH employees advised Plaintiff that he had a right to "refuse treatment" however, he was required to complete an "OMH PBSOTP Program Refusal Form" that advised Plaintiff of the possible consequences of his decision including: "negative decisions" by the Board of Parole and Time Allowance Committee and denial of privileges related to the Family Reunion Program ("FRP"). *Id*. Thus, Plaintiff participated in PBSOTP under "coercion and duress." *Id*.

On September 19, 2016, Plaintiff's assigned clinician, defendant LCSW Jean Burdick ("Burdick") prepared a Violent Risk Scale: Sex Offender ("VRSSO") Report. Am. Compl. at 14, 20, 21. Plaintiff objected to the report claiming that it contained false information. Id.

---

of Corrections and Community Supervision (DOCCS) or in the custody of the Office of Mental Health. According to DOCCS' website, Plaintiff is presently at Marcy C.F., in DOCCS' custody, with a parole eligibility date of September 2019. *See* http://nysdoccslookup.doccs.ny.gov (last visited Dec. 17, 2018).

[3] "The PBSOTP provides an intensive sex offender treatment program to inmates incarcerated with DOCCS who have been classified as high risk for committing a sexual offense upon release from prison. This program is operated by OMH clinical personnel within DOCCS facilities and is designed to address the multiple risk factors presented by this population." *See* www.omh.ny.gov/omhweb/foensic/bisot/ (last visited Dec. 11, 2018).

Burdick provided Plaintiff with a form entitled "Patient/Resident Request for Amendment of the Mental Health Record." *Id.* Plaintiff completed the form, and upon Burdick's instructions, on October 13, 2016, Plaintiff filed the form with defendant Unit Chief Bud C. Ballinger, III ("Ballinger"). *Id.* On December 15, 2016, Plaintiff was interviewed by Burdick and Ballinger in relation to the request for an amendment to his VRSSO report. Am. Compl. at 14, 15, 22. Burdick and Ballinger provided a copy of Burdick's response indicating, "[y]our request will be filed as part of your mental health record; however, your request for correction/addendum has been denied." *Id.* The false information remains in Plaintiff's records. *Id.*

In October 2016, Plaintiff filed New York State Freedom of Information Law ("FOIL") requests seeking copies of the policies, procedures, rules, and regulations regarding PBSOTP. Am. Compl. at 5. For a fee, Plaintiff was able to purchase copies of policies, procedures, and forms. *Id.* at 5-6. Central New York Psychiatric Center ("CNYPC") Administrative Policy 2.9 provides:

> It is the policy of CNYPC that OMH patients at CNYPC, and those located at DOCCS facilities, have the right to express concerns or complaints about patient care and/or treatment. A system has been put into place and is maintained that will ensure that every inmate-patient, or person acting on the inmate-patient's behalf, is aware of his/her right to submit complaints, that staff are knowledgeable of the complaint process, and that each complaint is recorded and investigated through resolution.

Am. Compl. at 6.

Pursuant to Policy 2.9, Plaintiff submitted a Formal Complaint on December 9, 2016 to defendant CNYPC Risk Management Specialist M. Bernstein ("Bernstein") that addressed the following issues: (1) the lack of written policies for the PBSOTP; (2) the lack of a formal grievance process; and (3) copying fees for treatment records. Am. Compl. at 12-13. When

4

Plaintiff failed to receive a response, he sent five letters to Sullivan and defendant Deborah J. McCulloch ("McCulloch"), the Executive Director of CNYPC. *Id*. at 6, 7, 8, 13.

On February 23, 2017, defendant Inpatient Director of Risk Management Jill Grant ("Grant") sent a letter to Plaintiff, related to his December 2016 complaint, advising that McCulloch would review his case "in the very near future." Am. Compl. at 9, 13. On March 1, 2017, March 17, 2017, and April 7, 2017, relying upon Policy # 2.9, Plaintiff sent letters to Grant. *Id*. Plaintiff did not receive any response to his letter or his Formal Complaint. *Id*.

On June 2, 2017, Plaintiff provided Burdick with a copy of Plaintiff's "litigation," filed in New York State Supreme Court, Albany County, against Sullivan related to the lack of polices, procedures, rules, and regulations. Am. Compl. at 23. Shortly thereafter, Plaintiff met with Burdick and was advised that he must complete a "Behavior Contract" assignment. *Id*. Plaintiff told Burdick that he felt she was retaliating against him for filing litigation against Sullivan. *Id.* Plaintiff objected to the assignment and Burdick responded, "[y]ou do not have a choice." *Id*. On June 19, 2017, Plaintiff executed the Behavior Contract, under duress. Am. Compl. at 23. The contract provided, "Mr. Mercer will refrain from discussing programmatic grievances in treatment group settings at all times." *Id*.

On July 13, 2017, Plaintiff sought permission from the court to supplement his petition in his pending litigation against Sullivan. Am. Compl. at 23. Specifically, Plaintiff sought to include an additional retaliation claim against Burdick. *Id*. Plaintiff provided Burdick with copies of the documents filed with the court. *Id*. at 23-24.

On July 21, 2017, defendant Megan X. Thomas ("Thomas"), was assigned as Plaintiff's social worker. Am. Compl. at 25. On August 4, 2017, Plaintiff met with Thomas, Ballinger, Burdick, and defendant Elder ("Elder"), and received an updated Behavior

5

Contract. *Id*. at 26. Plaintiff objected to the contract and claimed that it was issued in retaliation for Plaintiff's litigation. *Id*. Thomas responded, "I don't care about the Attorney General's Office or the Court[,] [d]o you like having a target planted on your back? What you are doing is self sabotage." *Id*.

On August 25, 2017, Plaintiff met with Thomas and Elder. Am. Compl. at 17, 18, 26. Thomas and Elder expressed their concern with Plaintiff's complaints related to the PBSOTP. *Id.* Plaintiff asked Elder why he repeatedly "retaliated against [him] when I have a right to file complaints and seek judicial intervention?" *Id.* Elder responded that Plaintiff should not have filed complaints and written letters without speaking to Treatment Team Leaders. *Id*. Minutes before the meeting ended, Thomas told Plaintiff that he was being placed in an "out of group" period designated as "Reflections". Am. Compl. at 17, 18, 26. Plaintiff objected. *Id.* Elder told him that it was not a choice. *Id.* at 18. Plaintiff accepted the assignment and received a Behavior Contract from Thomas. *Id.* As he was leaving the room, Plaintiff placed the "Reflection" assignment and contract on the table, Elder stated, aggressively, "[y]our actions will have consequences." Am. Compl. at 17, 18, 26.

On August 29, 2017, Ballinger, Elder, and Thomas suspended Plaintiff from the PBSOTP. Am. Compl. at 15-18. The suspension was based upon: (1) "grievance thinking," (2) Plaintiff's execution of the Behavior Contract "under duress;" (3) Plaintiff's refusal to accept the Reflections period; and (4) Plaintiff's attempt to deliver a legal document with an assignment. *Id*. Plaintiff was not afforded any notice prior to being suspended. *Id*.

On September 4, 2017, Thomas prepared a VRSSO with false information. Am. Compl. at 28.

On October 5, 2017, Plaintiff returned to the program and received an updated

6

Behavior Contract from Elder and Thomas. Am. Compl. at 19, 27.

On October 13, 2017, pursuant to Policy 2.9, Plaintiff submitted a Formal Complaint to Bernstein, Sullivan, and Ballinger alleging that Elder and Thomas retaliated against him when they suspended him from the program. Am. Compl. at 10, 15, 16. On November 2, 2017, Bernstein responded and advised that "the issues raised in your letter are primarily the same as those being litigated in the Albany County Supreme Court, the Risk Management Department will not be responding at this time." *Id*. On November 8, 2017, Plaintiff sent a letter to Bernstein explaining the scope of his October 2017 complaint. *Id.* On November 20, 2017, Bernstein responded, "a legal decision has been made on this matter. It has been determined that the issues raised in your previous correspondence are all related to the subject of your current litigation[.]" *Id*. at 10-11. In November 2017, Thomas prepared two VRSSO reports, with false information, in retaliation for Plaintiff's complaints against Elder and Thomas. Am. Compl. at 27-28.

On March 7, 2018, Thomas prepared a VRSSO with false information. Am. Compl. at 28, 29.

On July 11, 2018, Plaintiff forwarded a Formal Complaint to Bernstein and Ballinger accusing defendant Burdick of retaliation for making "unfounded accusations" to DOCCS' security staff resulting in Plaintiff being "placed in a compromising position of nudity." Am. Compl. at 9-12, 16, 19, 24, 25.

On July 12, 2018, Ballinger, Elder, and Thomas discharged Plaintiff from the PBSOTP. Am. Compl. at 9, 16. Plaintiff was not afforded any notice prior to being discharged. *Id*.

In a letter dated July 23, 2018, Bernstein responded that the July 11, 2018 complaint was investigated and the claim was deemed unfounded. Am. Compl. at 11, 17. On July 27,

7

2018, Plaintiff asked for direction on how to appeal Bernstein's decision. *Id*. at 12. On August 3, 2018, Bernstein advised that Plaintiff could appeal to McCulloch. *Id*. On August 27, 2018, McCulloch responded and concurred with the July 23, 2018 decision. *Id*. Plaintiff appealed to Sullivan, but did not receive a response. Am. Compl. at 12, 20.

On September 18, 2018, Plaintiff sent a request to Ballinger to re-enter the program. Am. Compl. at 20. On October 24, 2018, Plaintiff's request was granted. *Id.*

Construing the Amended Complaint liberally, plaintiff asserts the following: (1) Fourteenth Amendment due process claims; (2) equal protection claims; and (3) retaliation claims. *See generally* Am. Compl. Plaintiff requests monetary damages. *Id*. at 37-38. For a complete statement of Plaintiff's claims, refer to the Amended Complaint.

## III. ANALYSIS[4]

### A. Previous Claims

As a result of the review of the original Complaint, the Court directed Elder, Burdick, Ballinger, and Thomas to respond to the First Amendment retaliation claims. *See* Dkt. No. 5 at 22-23. These claims are repeated and realleged in the Amended Complaint, *see* Am. Compl. at 35, and thus, survive review as well.

### B. Fourteenth Amendment Due Process

Plaintiff claims that he was compelled to participate in the PBSOTP, under duress, without due process of law. Am. Compl. at 29-31. Plaintiff also claims that PBSOTP operated without any written rules, procedures, or regulations and thus, his due process rights were violated because he received no notice related to the preparation of business

---

[4] The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the October Order and it will not be restated in this Decision and Order. *See* Dkt. No. 5 at 2-4.

8

records and disciplinary proceedings. *Id*. at 32-35,

The law related to due process and mandated sex offender counseling was discussed in the October Order:

> Courts in this Circuit are split on the issue of whether an individual, not convicted of an express sex offense, has a liberty interest in being free from mandated sex offender counseling. *See Henderson v. Heffler*, No. 07-CV-0487C, 2010 WL 2854456, at *5 (W.D.N.Y. July 19, 2010) (citing *Rose v. Goldman*, No. 02 CV 5370, 2009 WL 4891810, at *6 (E.D.N.Y. Dec. 16, 2009) (addressing the issue of whether prisoners not convicted of a sex offense have a liberty interest in not being treated as a sex offender without due process); *see also Blake v. Fischer*, No. 09-CV-266 (DNH/DRH), 2010 WL 2522198, at *12 (N.D.N.Y. Mar. 5, 2010) (collecting cases) ("Courts within the Second Circuit appear to be reaching a consensus that recommendations for sex offender classification and programming do not trigger due process rights."). In cases however, where the inmate was convicted of a sexual offense, DOCCS decision to require rehabilitation has been "judicially deemed legitimate and rational." *Blake*, 2010 WL 2522198, at *12 (citing *Vega v. Lantz*, 596 F.3d 77, 2010 WL 698384, at *5 (2d Cir. Mar. 2, 2010)). "[T]he Supreme Court has held that '[a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not . . . constitute [an] atypical and significant hardship [ ] in relation to the ordinary incidents of prison life.' " *Id.* at *10.

Dkt. No. 5 at 15.

In the October Order, the Court dismissed the due process claims holding:

> In this case, Plaintiff was convicted of a sex offense, thus, Plaintiff does not have a liberty interest in being free from participation in a sex offender treatment program. *See Rheaume v. Pallito*, No. 5:11-CV-72, 2011 WL 6934821, at *4, n.1 (D. Vt. Nov. 28, 2011) (holding that because the plaintiff was convicted of a sex offense, the case is distinguishable from *Rose*). Having concluded that Plaintiff does not have a protected liberty interest in his classification as a sex offender, the Court does not address Plaintiff's procedural due process claims regarding the lack of written rules and/or regulations, the suspension, or discharge. *See Tinsley v. Goord*, No. 05

9

CIV. 3921, 2006 WL 2707324, at *5 (S.D.N.Y. Sept. 20, 2006).

Dkt. No. 5 at 15-16.

Despite the fact that Plaintiff was afforded the opportunity to amend his Complaint, the amended pleading does not cure the deficiencies in the prior pleading related to the due process claim. As he did in the original Complaint, Plaintiff continues to maintain that he was not designated as a sex offender. Am. Compl. at 30-31. Plaintiff's litigation history belies that contention. In 1996, Plaintiff filed a petition for habeas corpus relief. *Mercer v. Herbert*, 133 F. Supp. 2d 219 (W.D.N.Y. 2001). In an Order filed on 2011, the Court discussed the procedural history of Plaintiff's criminal case and noted that, after a jury trial, Plaintiff was found guilty of three counts of Kidnaping in the Second Degree, nine counts of Sodomy in the First Degree, four counts of Sodomy in the Second Degree, two counts of Sodomy in the Third Degree, two counts of Rape in the First Degree, one count of Rape in the Second Degree, three counts of Sexual Abuse in the First Degree, and one count of Assault in the Second Degree.[5] *Id*. at 221.

Additionally, the Amended Complaint lacks facts suggesting the participation in the PBSOTP involved atypical and significant hardship or that Plaintiff suffered any "adverse consequences" as a result of his participation in the program. *See Ericksen v. Booth*, No. CIV.A. 2:08CV104, 2009 WL 1974195, at *5 (N.D.W. Va. July 7, 2009), *aff'd*, 355 F. App'x 678 (4th Cir. 2009) (holding that "simple damage to reputation does not give rise to a liberty interest claim; rather, the damage must be accompanied by some significant deprivation of an interest protected by state or federal law, or by an alteration of legal status"); *see also*

---

[5] Plaintiff's crimes were committed against three teenage girls in Niagara County between June 16 and June 28, 1986. *Mercer v. Herbert*, 133 F. Supp. 2d 219, 221 (W.D.N.Y. 2001).

*Gursky v. Dep't of Corr., New Lisbon Corr. Inst.*, No. 10-CV-113, 2010 WL 2471693, at *4 (W.D. Wis. June 15, 2010) (holding that the plaintiff did not have a liberty interest in not being forced to participate in a sex offender treatment program).

Accordingly, for the reasons set forth in the October Order, Plaintiff did not have a protected liberty interest in being free from "non-voluntary" sex offender treatment. Thus, Plaintiff's due process claims are dismissed. *See Tinsley*, 2006 WL 2707324, at *5 (holding that "nothing suggests that either New York state law or prison regulations have created a liberty interest in prisoners of avoiding classification as sex offenders or participating in related treatment programs. Nor do we believe that requiring an inmate to participate in a sex offender treatment program "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

### C. Equal Protection

The law related to equal protection was discussed in the October Order and will not be restated herein. Dkt. No. 5 at 16. In the October Order, the Court dismissed the equal protection claims because Plaintiff failed to identify any individuals treated differently than Plaintiff under similar situations. *Id*. at 17. In the Amended Complaint, while Plaintiff summarily states that he was, "treated differently from others in 'treatment,'" (see Am. Compl. at 36), the amended pleading lacks any facts supporting this conclusory statement and thus, fails to state an equal protection claim. Accordingly, for the reasons set forth in the October Order, Plaintiff's Fourteenth Amendment Equal Protection claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 265 (S.D.N.Y. 2014) (dismissing the plaintiff's equal protection claim because nothing in the complaint

suggested that similarly-situated inmates were treated more favorably than the plaintiff, or that the plaintiff was singled out for discriminatory treatment).

### D. Violations of DOCCS' Regulations and Directives

Plaintiff claims that defendants violated DOCCS' "regulatory and statutory law." Am. Compl. at 29-30. A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim). "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . ."); *Fluent v. Salamanca Indian Lease Auth.*, 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles). Failure to follow a DOCCS' Directive does not give rise to a § 1983 claim. Accordingly, to the extent that Plaintiff attempts to assert a cause of action against any defendant based upon the failure to follow DOCCS' directives, these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014).

### E. False Reports

Plaintiff claims that defendants prepared false VRSSO reports. *See* Am. Compl. at 36-

12

37. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988)); *accord, Pittman v. Forte*, No. 9:01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.); *see also Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief."). The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862.

As discussed *supra*, Plaintiff's retaliation claims survive initial review and require a response. To the extent that Plaintiff attempts to assert separate constitutional claims based upon the preparation of false reports, those claims are dismissed for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Amended Complaint (Dkt. No. 8) is accepted for filing and is the operative pleading; and it is further

**ORDERED** that Plaintiff's First Amendment retaliation claims against Elder, Burdick, Ballinger, and Thomas survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response; and it is further

**ORDERED** that all remaining claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be

granted;[6] and it is further

**ORDERED** that defendants shall file a response to the Amended Complaint within **thirty (30) days** of the filing date of this Decision and Order; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

Dated: December 26, 2018
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[6] Generally, when a district court dismisses a *pro se* action *sua sponte*, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *See Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord*, *Smith v. Fischer*, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009); *Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan.130 2008); *see also Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).